IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
DEL RIO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 13-00490 DAE |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| PAOLO MARTIN RAMIREZ-CHAVEZ | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

ORDER GRANTING GOVERNMENT'S MOTION IN LIMINE

Before the Court is the Government's motion in limine to exclude evidence concerning the Defendant's putative defense of duress. (Doc. # 16.) On June 19, 2013, the Court held an evidentiary hearing to consider the Government's motion. For the reasons given below, the Court **GRANTS** the Government's motion.

BACKGROUND

I. Procedural History

Defendant Paolo Ramirez-Chavez ("Defendant") is charged with illegal reentry after deportation in violation of 8 U.S.C. § 1326(a) & (b)(1)/(2). (Doc. # 9.) Defendant was previously convicted for illegal entry into the United

States in contravention of 8 U.S.C. § 1325.

On June 7, 2013, the Government filed a motion in limine, requesting that Defendant make a pretrial offer of proof to determine whether there is sufficient evidence for Defendant to present his duress defense at trial. (Doc. # 16.) On June 13, 2013, Defendant filed a response in opposition to the motion. (Doc. # 21.) Soon thereafter, the Government filed a reply. (Doc. # 22.)

II. Factual Background

According to Defendant's proffer, in May 2012, Defendant hired a smuggler, Christian Ortiz, to transport him from his home country of Nicaragua into the United States. Ortiz charged Defendant $3000 and promised to convey Defendant as far as the state of Virginia. With the help of Ortiz, Defendant traveled from Nicaragua to Guatemala and from Guatemala to Mexico City, Mexico. Defendant then journeyed by bus to Nuevo Laredo, Mexico, where he was greeted at the bus station by another smuggler and assisted across the border into the United States. Defendant was later apprehended by United States Border Patrol officers and removed from the country.

Following his deportation, Defendant contacted Ortiz a second time, again seeking assistance to illegally enter the United States. With the help of Ortiz, Defendant traveled by the same route through Nuevo Laredo into the United

States.  He was later apprehended by authorities in the United States and sent back to Nicaragua.

Upon his return to Nicaragua, Defendant again contacted Ortiz.  This time, instead of going to Nuevo Laredo, Defendant traveled by bus to Piedras Negras, Mexico.  A smuggler associated with Ortiz met Defendant at the bus station in Piedras Negras and informed Defendant that he was making arrangements to bring Defendant across the border.  The smuggler asked Defendant to pay $1500.  Defendant believed this to be part of the fee for his transport to the United States and agreed to provide the money.  They used a cell phone to call Defendant's wife, who agreed to send the requested money.  The smuggler then took Defendant to a house, where he placed Defendant in a room with two other men being held by three armed guards.  The guards had automatic rifles and a pistol.

Defendant spent the night in the house.  The next morning, the smuggler who had brought him from the bus station demanded that Defendant pay an additional two to three thousand dollars.  Defendant's captor took a board, approximately three feet long and half an inch thick, and beat Defendant below his knees and in his kidneys.  The smuggler then informed Defendant that he would not be released until his wife paid the money as demanded.

The next day, the smuggler beat Defendant in the same manner in both the morning and the evening. His captors took photographs of Defendant following the beatings and emailed the photographs to Defendant's wife. The beatings continued for several more days. On the seventh day of his captivity, Defendant was beaten in the morning. A few hours later, around approximately 5:00 P.M., the guards escorted the two other men being held with Defendant out of the house. Finding himself alone, Defendant tried the back door. It was unlocked, and Defendant ran out of the house and jumped over the fence. He ran for several minutes until, at some point, he flagged down a taxi and asked the taxi driver to take him to the border. The taxi driver dropped Defendant off by the Rio Grande river, and Defendant waded across the river and entered the United States. Once across the river, he traveled for approximately ten to twenty minutes before he encountered United States Border Patrol officers. He ran from the officers, but was apprehended and taken into custody.

## DISCUSSION

I. <u>Propriety of Pretrial Offer of Proof</u>

Defendant argues that a motion <u>in limine</u> is not the proper mechanism for the Government to challenge the legal sufficiency of Defendant's proposed defense of duress. More specifically, Defendant contends that Fifth Circuit

4

precedent requires that he be permitted to put on evidence of a duress defense <u>at trial</u> and, at the close of the evidence, the Court may determine whether he is entitled to a jury instruction as to duress.

The Court is not persuaded. Defendant relies upon <u>United States v. Posada-Rios</u>, 158 F.3d 832, 873 (5th Cir. 1998), where the Fifth Circuit considered whether a defendant was entitled to a jury instruction on duress after the defendant put on evidence of a duress defense at trial. The <u>Posada-Rios</u> court did not address the propriety of <u>pretrial</u> review of a duress defense because that question was not before the court. Defendant has not cited, and this Court has not found, any controlling Fifth Circuit precedent that would foreclose pretrial review of a duress defense.

The Federal Rules of Criminal Procedure permit pretrial motions that seek to limit evidence to be offered at trial, and a judge may rule on such a motion prior to trial as long as the "court can determine [the motion] without a trial of the general issue." Fed. R. Crim. P. 12(b)(2); <u>see</u> Fed R. Crim. P. 12(d). The Court does not decide the merits of the duress defense, but rather whether there is sufficient evidence, <u>as a matter of law</u>, to permit the defense to be submitted to the jury. <u>United States v. Villegas</u>, 899 F.2d 1324, 1343 (2d Cir. 1990); <u>see</u> <u>United States v. Tokash</u>, 282 F.3d 962, 968 (7th Cir. 2002) ("It is a basic premise of our

5

legal system that juries are the triers of fact only; it is for the judge, not the jury, to interpret the law."). "Where the evidence to be presented would be insufficient as a matter of law . . . no proper interest of the defendant would be served by permitting his legally insufficient evidence to be aired at trial, and interests of judicial economy suggest that the jury should not be burdened with the matter." Villegas, 899 F.2d at 1343. Pretrial review of the duress defense will ensure that the jury is not confused by irrelevant and prejudicial evidence.

The Court notes that an overwhelming majority of federal courts of appeals have permitted pretrial review of a defendant's evidence relating to a defense of duress. See United States v. Vasquez-Landaver, 527 F.3d 798, 806 (9th Cir. 2008) (affirming pretrial exclusion of duress defense); United States v. Portillo-Vega, 478 F.3d 1194, 1201 (10th Cir. 2007) (same); United States v. Johnson, 416 F.3d 464, 468 (6th Cir. 2005) (same); Tokash, 282 F.3d at 968 (same); United States v. Miller, 59 F.3d 417, 422 (3d Cir. 1995) (same); United States v. Sarno, 24 F.3d 618, 621–22 (4th Cir. 1994) (same); Villegas, 899 F.2d at 1343–44 (same); United States v. Polanco-Gomez, 841 F.2d 235, 238 (8th Cir. 1988) (same).

II. Sufficiency of Putative Duress Defense

The defense of duress is a common-law doctrine that federal criminal

law has incorporated.  See United States v. Bailey, 444 U.S. 394, 409–10 (1980).

In the Fifth Circuit, a defendant seeking to offer a duress defense to a jury must show:

> (1)  defendant was under an unlawful and present, imminent, and impending threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury;
>
> (2)  defendant had not recklessly or negligently placed himself in a situation in which it was probable that he would be forced to choose the criminal conduct;
>
> (3)  defendant had no reasonable legal alternative to violating the law; a chance both to refuse to do the criminal act and also to avoid the threatened harm; and
>
> (4)  that a direct causal relationship may be reasonably anticipated between the criminal action taken and the avoidance of the threatened harm.

See Posada-Rios, 158 F.3d at 873.  "These requirements are addressed to the impact of a threat on a reasonable person."  United States v. Willis, 38 F.3d 170, 175 (5th Cir. 1994).  "Because duress is an affirmative defense, a defendant must present evidence of each of the elements of the defense before it may be presented to the jury."  Posada-Rios, 158 F.3d at 873.  In determining whether a defendant has made a threshold showing of the elements of the defense, a court must "objectively evaluate" the facts presented by the defendant.  Id.  At trial, a defendant must prove each element of duress by a preponderance of the evidence.  See Dixon v United States, 548 U.S. 1, 17 (2006) ("Congress intended petitioner to

bear the burden of proving the duress defense by a preponderance of the evidence.").

   A.   <u>Present, Imminent, and Impending Threat</u>

The first element of a duress defense is whether the defendant was under an unlawful and "present, imminent, and impending threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury." <u>Posada-Rios</u>, 158 F.3d at 873 (citations omitted) (internal quotation marks omitted). The Fifth Circuit has explained that a duress defense "only arises if there is a real emergency leaving no time to pursue any legal alternative." <u>Id.</u> at 874. The Fifth Circuit has further noted:

> Examples of the type of immediacy that will warrant a justification defense include a prisoner who flees a burning prison without permission to avoid being burned to death, <u>see</u> <u>United States v. Kirby</u>, 74 U.S. 482, 487 (1869), and a mariner who jettisons wood from a sinking ship during a storm without paying excise taxes to save the lives of passengers. <u>See</u> <u>Reniger v. Fogossa</u>, 1 Plowd.1, 75 Eng. Rep. 1 (K.B. 1551).

<u>Id.</u> at 874 n.20. Fear of future harm does not satisfy the present, imminent, and impending threat requirement. <u>United States v. Lee</u>, 208 F. App'x 352, 354 (5th Cir. 2006). There must be evidence of "absolute and uncontrollable necessity." <u>Posada-Rios</u>, 158 F.3d at 874 (quoting <u>The Diana</u>, 74 U.S. 354, 360–61 (1868)).

Here, Defendant was able to leave the house where he was held captive, jump the fence, and flag down a taxi. Once in the taxi, Defendant could

8

have asked the cab driver to take him anywhere in the city. He had reached a place of temporary safety; the proffer shows that his captors were not in hot pursuit because he had slipped away from the house unnoticed. At that point, Defendant made a conscious decision to go to the border instead of taking any number of alternative courses of action. Once at the border, he crossed the Rio Grande river without anyone pursuing him. While the Court is not unsympathetic to Defendant's plight, there simply is no evidence of any "present, imminent, and impending threat" that would have compelled Defendant to cross the border. Indeed, Defendant could have had the taxi take him to the police or even the legal border crossing, where Defendant could have sought refuge. Thus, the Court finds that Defendant has failed to present sufficient evidence to satisfy this element of a duress defense.

B. Recklessness or Negligence by Defendant

The second element of a duress defense is that the defendant did not "recklessly or negligently place[] himself in a situation in which it was probable that he would be forced to choose the criminal conduct." Posada-Rios, 158 F.3d at 873 (quoting United States v. Harper, 802 F.2d 115, 117 (5th Cir. 1986)). The very reason that Defendant traveled from Nicaragua to Piedras Negras and became involved with the smugglers was to commit the crime of illegal reentry into the

9

United States. While Defendant suffered a terrible ordeal upon arriving in Piedras Negras, he negligently placed himself in a dangerous situation by becoming involved with the smugglers for an illegal purpose. Thus, Defendant's proffered evidence falls short of satisfying this element of duress.

    C.    <u>No Reasonable Legal Alternative</u>

The third element of a duress defense is that "defendant had no reasonable legal alternative to violating the law." Posada-Rios, 158 F.3d at 873 (citations omitted) (internal quotation marks omitted). A reasonable legal alternative exists if a defendant has "a chance both to refuse to do the criminal act and also to avoid the threatened harm." Id. To prove that no legal alternatives existed, a defendant "must show that he actually tried the alternative or had no time to try it, or that a history of futile attempts revealed the illusionary benefit of the alternative." Id. (quoting Harper, 802 F.2d at 118).

In this case, once Defendant reached the taxi, several reasonable legal alternatives lay before him because the taxi driver could have taken him anywhere in Piedras Negras. Defendant could have gone straight to the police or directly to the bus station and taken a bus out of the city. Instead, Defendant made a conscious choice to cross the border and not to report to the authorities. Moreover, because his captors were not in hot pursuit, Defendant had enough time to pursue

these reasonable alternative courses of conduct.

Having found that Defendant has failed to present sufficient evidence to satisfy the first three elements of a duress defense, the Court does not reach the fourth element. Because Defendant's duress defense fails as a matter of law, the Court will not permit Defendant to present the defense to the jury.

III.    Voluntariness

At the hearing, counsel for Defendant argued that duress negated the voluntariness of Defendant's act of crossing the border illegally. As such, she argued that evidence of the ordeal that Defendant suffered at the hands of the smugglers should be presented to the jury. This Court disagreed, explaining that Defendant's reentry into the United States was voluntary and his defense therefore could not be offered to negate an element of the offense, but rather only to excuse the criminal conduct.

In Dixon v. United States, 548 U.S. 1 (2006), the Supreme Court explained that the defense of duress "may excuse conduct that would otherwise be punishable, but the existence of duress normally does not controvert any of the elements of the offense itself." Id. at 6. The statute that defines the instant offense, 8 U.S.C. § 1326, makes no reference to a mental state; illegal reentry is a general intent crime. See United States v. Guzman-Ocampo, 236 F.3d 233, 238–39 (5th

11

Cir. 2000). Thus, the Government need only prove that the alien voluntarily reentered the United States without permission. See id. at 239. The Fifth Circuit has implied that the offense includes the mens rea of "knowingly" reentering the country. See id. at 238 (citing United States v. Tovias-Marroquin, 218 F.3d 455, 457–58 (5th Cir. 2000)). The Fifth Circuit Pattern Jury Instructions for illegal reentry after deportation provide that the jury must find that "the defendant knowingly entered [was found in] [attempted to enter] the United States." 5th Circuit Criminal Pattern Jury Instructions § 2.05 (2012) (emphasis added). At the hearing, Defendant suggested that duress would negate both the voluntary act requirement and the mens rea required for the crime of illegal reentry.

"Generally, the affirmative defense of duress does not negate the mental states of knowledge or intent, or the voluntary nature of a criminal act." United States v. Solorzano-Rivera, 368 F.3d 1073, 1079 (9th Cir. 2004); see Dixon, 548 U.S. at 6–7. In Dixon, the Supreme Court explained:

> The rationale of the defense [of duress] is not that the defendant, faced with the unnerving threat of harm unless he does an act which violates the literal language of the criminal law, somehow loses his mental capacity to commit the crime in question. Nor is it that the defendant has not engaged in a voluntary act. Rather it is that, even though he has done the act the crime requires and has the mental state which the crime requires, his conduct which violates the literal language of the criminal law is excused . . .

Dixon, 548 U.S. at 7 n.5 (quoting 2 Substantive Criminal Law § 9.7(a), at 73 (2d

12

ed. 2003)) (emphasis added).

The voluntary act requirement is a narrow one, generally removing only truly uncontrollable physical acts from criminal liability. See Model Penal Code § 2.01(2) (finding a bodily movement that is not a product of the effort or determination of the actor, either conscious or habitual, to be involuntary). In United States v. Solorzano-Rivera, the Ninth Circuit held that duress did not negate the voluntariness of illegal reentry into the United States. 368 F.3d at 1080–81. The Solorzano-Rivera court provided examples of involuntary entries into the United States: an individual extradited to the United States against his will or paroled into the country by proper authorities; one who is sleeping on a train that unexpectedly enters the country; one traveling on a plane that makes an emergency landing in the country. Id. at 1080 (citing United States v. Quintana-Torres, 235 F.3d 1197, 1200 (9th Cir. 2000)). The court held that an alien jumping the international boundary fence to escape Mexican police officers committed a voluntary act. Solorzano-Rivera, 368 F.3d at 1080–81.

In this case, Defendant did not cross the border as the result of an uncontrollable physical act. Rather, he intentionally acted on the "conscious desire" to cross the Rio Grande river into the United States, even if his purpose in so doing was to escape harm. See United States v. Leal-Cruz, 431 F.3d 667, 673

(9th Cir. 2005). Based on the proffered evidence, Defendant's entry into the United States was the result of a voluntary act, and Defendant may not present evidence of duress to the jury to negate the voluntariness component of the instant offense.

To the extent that Defendant may be suggesting that his duress defense bears upon whether he "knowingly" reentered the United States— i.e. possessed the requisite mens rea for the crime of illegal reentry—this argument fails. "Like the defense of necessity, the defense of duress does not negate a defendant's criminal state of mind when the applicable offense requires a defendant to have acted knowingly or willfully." Dixon, 548 U.S. at 6; accord United States v. Meraz-Solomon, 3 F.3d 298, 299 (9th Cir. 1993) ("Where a statute identifies knowledge as the only mental element necessary for commission of the crime, it is not a violation of due process to require a defendant to bear the burden of proving duress by a preponderance of the evidence."). In Dixon, the Supreme Court explained that, unless the text of the relevant statute provides otherwise, "the term 'knowingly' merely requires proof of knowledge of the facts that constitute the offense." Dixon, 548 U.S. at 5 (quoting Bryan v. United States, 524 U.S. 184, 193 (1998)). Even assuming that Defendant felt he had no choice but to cross the border in order to escape his captors, this has no bearing on whether he knew that

14

he was reentering the United States without permission.[1]  Thus, a duress defense is unavailing to Defendant to negate the mens rea of the crime of illegal reentry.  See Solorzano-Rivera, 368 F.3d at 1081.

CONCLUSION

For the reasons stated above, the Court **GRANTS** the Government's motion in limine to exclude evidence of Defendant's duress defense.

IT IS SO ORDERED.

DATED: San Antonio, Texas, July 2, 2013.

_____
David Alan Ezra
Senior United States District Judge

---

[1] The Court notes that, according to Defendant's proffer, this was Defendant's third entry into the United States without legal permission.  His previous two illegal entries resulted in deportation.